IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| HUAN ZHOU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-370 (RDA/IDD) |
| | ) | |
| LOWE'S HOME CENTERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Rule 56 Motion for Summary Judgment brought by Defendant Lowe's Home Centers, LLC ("Defendant" or "Lowe's") in this Family and Medical Leave Act employment discrimination case (Dkt. 38); Defendant's Motion to Strike Plaintiff's Second Opposition to Motion for Summary Judgment (Dkt. 48); and Plaintiff Huan Zhou's ("Plaintiff" or "Zhou") Motion to File out of Time (Dkt. 51). The Court dispenses with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). These matters have been fully briefed and are now ripe for disposition.

Considering Defendant's Motion for Summary Judgment (Dkt. 38), Defendant's Memorandum in Support (Dkt. 38-1), Plaintiff's Brief in Opposition (Dkt. 43), and Defendant's Reply (Dkt. 59), it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Considering Defendant's Motion to Strike (Dkt. 48), Memorandum in Support (Dkt. 49), Plaintiff's Opposition (Dkt. 55), and Defendant's Reply (Dkt. 60), it is hereby ORDERED that Defendant's Motion to Strike is GRANTED. Considering Plaintiff's Motion to File Out of Time (Dkt. 51), Memorandum in Support (Dkt. 53), Defendant's Opposition (Dkt. 54), and Plaintiff's Reply (Dkt. 58), it is hereby ORDERED that Plaintiff's Motion is DENIED. For the

reasons that follow, judgment will be entered against Plaintiff because she has failed to establish a genuine issue of material fact.

## I. BACKGROUND

### A. Factual Background

Although the parties dispute certain facts, the following facts are either undisputed or considered in the light most favorable to Plaintiff. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (stressing that courts must view the evidence on summary judgment in the light most favorable to the nonmoving party); *see also* Defendant's Statement of Undisputed Material Facts (Dkt. 38-1); Plaintiff's Response To Defendant's Statement of Undisputed Material Facts (Dkt. 43); Plaintiff's Statement of Undisputed Facts (Dkt. 43).

#### 1. Mother's Illness

Plaintiff Huan Zhou was employed by Defendant Lowe's Home Centers, LLC as a Customer Service Associate from September of 2007 until her termination on October 19, 2018. Dkt. 38-1, ¶¶ 1-2. During her eleven years of employment with Lowe's, Zhou received several awards from the company. Dkt. Nos. 3; 43, ¶ 1.

Zhou's mother was diagnosed with endometrial cancer in May of 2018 and began treatment with Dr. Linda Duska in June of 2018. Dkt. 38-1, ¶ 7. The cancer required multiple procedures, which Zhou's mother continued until she died. Dkt. Nos. 38-6; 38-7; 38-8. Zhou's mother began chemotherapy treatments on August 6, 2018, which recurred every three weeks. *See* Dkt. Nos. 43, 5; 38-7. In January of 2017, Zhou asked to step down from her management position at Lowe's to spend more time caring for her mother, a request Lowe's granted. Dkt. 38-1, ¶ 1. Although she later attempted to quit her job altogether in the Spring of 2018, she agreed to remain at Lowe's after negotiating with her manager, Evelyn Cobbinah. Dkt. 43, 6; *see also* Dkt. 38-3. Dr. Duska

recommended Zhou take leave to care for her mother; the parties disagree, however, as to how long the doctor recommended Zhou should take leave. Dkt. Nos. 38-1, ¶ 12 (citing Dkt. 38-7); 43, 5. On June 15, 2018, Zhou requested time off for her mother's surgery. Dkt. 38-1, ¶ 8. Zhou's assistant managers directed her to Reed Group, a third-party administrator handling FMLA leave requests on behalf of Lowe's. Dkt. 38-1, ¶ 8 (citing Dkt. 38-11).

### 2. FMLA Leave

The parties generally agree that Lowe's relies on Reed Group and Sedgwick, third-party administrators, to process FMLA requests, but they disagree as to whether Zhou knew the details of the FMLA process at the time of her employment. Dkt. Nos. 38-1, ¶ 5 (citing Dkt. 38-3); 43, 4. The parties agree that Zhou took FMLA leave three times for pregnancies—in 2011, 2013, and 2016—but disagree as to whether Zhou knew how to request FMLA leave to care for a family member. Dkt. Nos. 38-1, ¶ 3 (citing Dkt. 38-3); 43, 3.

Zhou filed another request for FMLA leave on June 18, 2018, which Reed Group denied on July 30, 2018, in a memo addressed to Zhou stating the cause for denial was "insufficient certification." Dkt. 59-2. Lowe's instead granted Zhou unpaid personal leave from July 5 through July 11, 2018. Dkt. Nos. 38-1, 9; 43, 6. Sedgwick also processed Zhou's application for FMLA leave, which explained that she needed to care for her sick mother. Dkt. 38-14. According to the FMLA policy that Lowe's follows, caring for a family member with a serious health condition is a legitimate reason for granting FMLA leave, which may be taken intermittently. Dkt. 38-1, ¶ 10 (citing Dkt. 38-14, ¶ 8). On October 15, 2018, Zhou submitted a new FMLA leave request to Sedgwick. Dkt. 38-1, ¶ 35.

### 3. Timecard

The parties agree that in October of 2018, a Lowe's store manager, Alex Quiroz, conducted an audit in Kronos, Lowe's' timekeeping system, which revealed that Zhou's start time was altered on 33 different occasions between July and October of 2018.  Dkt. Nos. 38-1, ¶¶ 15, 18 (citing Dkt. 38-11); 43, 6.  The Lowe's Employee Standards of Conduct Policy states that employees are never to falsify or disguise the true nature of any company record.  Dkt. Nos. 38-13; 43, 6.  The parties generally agree that the Standards of Conduct Policy also explains that changing an employee's start time after the fact is a falsification of company records.  Dkt. Nos. 38-1, ¶ 17 (citing Dkt. 38-13, ¶ 5); 43, 6-7.  The parties disagree on whether these changes were made to Zhou's timecard before or after she arrived for work on those days.  Dkt. Nos. 38-1, ¶ 17 (citing Dkt. 38-13, ¶ 5); 43, 6-7.[1]  According to the Corrective Action Reports maintained by Lowe's, which detail official company policy on violations, falsification of company documents is a Class A violation and could result in termination.  Dkt. 38-13.

After concluding the audit, Lowe's investigated Zhou and her managers, Evelyn Cobbinah, Angela Hubbard, Nana Alabi, and Derick Nerquaye Tetteh, regarding the change in Zhou's start times.  Dkt. Nos. 38-1, ¶ 22 (citing Dkt. 38-11).  The investigation found that the four managers agreed to changing Zhou's start times at Zhou's request, which she made based on her obligations to care for her sick mother.  Dkt. 38-1, ¶ 23 (citing Dkt. 38-13, ¶ 7).

The parties generally agree that Zhou admitted, in a signed written statement, that her times were changed because of the difficulties she experienced in caring for her sick mother.  Dkt. Nos.

---

[1] Plaintiff appears not to contest that these changes were made, instead only contesting how they reflected her work performance.  Plaintiff's Opposition brief states, "[w]hether or not the manager decided to make the schedule adjustment before or after Zhou's call ahead and arrival does not reflect badly on Zhou or the manager for making the time entries accurately reflect the time she actually worked[.]"  Dkt. 43, 6-7.

38-1, ¶ 24 (citing Dkt. 38-3,); 43, 7.  Even so, they disagree over the circumstances surrounding

that statement.  *Id.*  Zhou applied for FMLA leave again on October 15, 2018, prior to her

termination, citing her desire to care for her sick mother.  Dkt. Nos. 38-1 ¶ 35; 43, 10.  On October

18, 2018, Zhou filed a discrimination complaint with Lowe's' grievance department, Ethics Point,

based on the investigation into the timecard alterations.  *See* Dkt. 38-1, 21.  After Lowe's

concluded its investigation, Zhou was terminated from her position at the store for falsification of

company records.  Dkt. Nos. 38-1, ¶ 39, 19; 43, 11.  In all, Lowe's fired ten employees from the

Alexandria store for falsifying time records after the fact, including the four assistant managers

involved in distorting Plaintiff's timecards.  Dkt. Nos. 38-1, ¶ 38 (citing Dkt. 38-10); 38-13, ¶ 10;

38-11.

## B.  Procedural Background

On April 20, 2020, Plaintiff filed a Complaint in this Court asserting claims of FMLA

interference and retaliation under 29 U.S.C. § 2615(a)(2), which prohibits discrimination against

an employee who exercises substantive rights the FMLA confers.  Dkt. 1.  At the

March 19, 2021 Final Pretrial Conference, this Court set a May 4, 2021 deadline for any summary

judgment motions.  Dkt. 36.

On May 4, 2021, Defendant filed its Motion for Summary Judgment.  *See* Dkt. 38-1.

Defendant argues for summary judgment on Plaintiff's FMLA retaliation and interference claims

because (1) Plaintiff cannot establish a *prima facie* case of retaliation; (2) Defendant did not

interfere with Plaintiff's FMLA request; and (3) Defendant provided Plaintiff with timely notice

of her rights.  Dkt. 38-1, 19, 26, 29.  Plaintiff argues that she has established a *prima facie* case of

FMLA retaliation and that she can succeed on her claim of FMLA interference.  Dkt. 43.

Then, on May 18, 2021—the deadline for responding to Defendant's summary judgment motion—Plaintiff moved for a three-day extension of time to file her Opposition to Defendant's motion. Dkt. 40. Over Defendant's objection, Magistrate Judge Davis granted Plaintiff's Motion for an Extension of Time. Dkt. 42. On May 21, 2021, Plaintiff opposed Defendant's Summary Judgment Motion without submitting any attached exhibits. Dkt. 43. Three days later, she filed a second Opposition brief, with 43 exhibits attached. Dkt. 44. Plaintiff's counsel has characterized this second brief as a "corrected Memorandum in Opposition." Dkt. 51.

On May 27, 2021, Defendant submitted a Motion to Strike Plaintiff's Second Opposition to the Motion for Summary Judgment. Dkt. 48. Plaintiff opposes this Motion to Strike. *See* Dkt. 51. In addition, she has also filed a Motion to File Out of Time as to Defendant's Motion for Summary Judgment, where she asks the Court to deem her second Opposition brief—submitted outside of the three-day extension Plaintiff requested and received—as timely filed. Dkt. 51.

## II. STANDARDS OF REVIEW

### A. Motion to Strike

Under Rule 6(b) of the Federal Rules of Civil Procedure, a "court may, for good cause, extend the time" by which "an act may or must be done." Fed. R. Civ. P. 6(b). Rule 6(b) also provides that "after the time has expired," as it had in this case, such extensions of time may only be granted by a court "on motion . . . if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The test for demonstrating excusable neglect requires a court to consider "(1) the danger of prejudice to the nonmoving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Smith v. Look Cycle USA*, 933 F. Supp. 2d 787, 791 (E.D. Va. 2013). In all cases, "the burden of demonstrating excusability

lies with the party seeking the extension[.]" *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996) (citations omitted).

This Court's Local Civil Rule 7(H) requires that "all pleadings, motions, briefs, and filings of any kind must be timely filed with the Clerk's Office of the division in which the case is pending." E.D. Va. Loc. Civ. R. 7(H). Local Civil Rule 7(F)(1) requires that a party opposing a motion, "[u]nless otherwise directed by the Court," "shall file a response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service." E.D. Va. Loc. Civ. R. 7(F)(1). And under Local Civil Rule 7(I), "[a]ny requests for an extension of time relating to motions must be in writing and, in general, will be looked upon with disfavor." E.D. Va. Loc. Civ. R. 7(I).

## B. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden" of showing that there is no genuine issue of material fact. *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a Court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Here, Plaintiff is the non-moving party and all reasonable inferences are accordingly drawn in her favor. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan*, 572 U.S. at 657). This "fundamental principle" guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.* "[A]t the summary judgment stage[,] the [court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-28. And a "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248.

Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. "An

affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And this Court requires that the non-moving party list "all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. Civ. R. 56(B).

## III. ANALYSIS

### A. Motion to File Out of Time and Motion to Strike

Plaintiff has submitted a Motion to File out of Time a second Opposition to Defendant's Motion for Summary Judgment (Dkt. 51), and Defendant has moved to strike Plaintiff's second brief opposing Defendant's Motion for Summary Judgment (Dkt. 48). According to Defendant, the Court should strike Plaintiff's second Opposition because she filed a brief that simply copied the argument section of a different case, replacing only the parties' names. *See* Dkt. 49, 1. Defendant alleges that Plaintiff's counsel lifted the argument section from a brief filed in another case—specifically, *Antekeier v. Lab. Corp. of Am.*, No. 1:17-cv-786, 2017 WL 9673480 (E.D. Va. Dec. 1. 2017) (Dkt. 26)—and presented it as her own. *Id.* Then, Defendant contends, Plaintiff submitted a second Opposition three days later, which she represented as merely a corrected copy of the first brief when it was, in fact, an entirely new brief in substance. *Id.* at 8. According to Defendant, these are "two significant misrepresentations to the Court" warranting serious action. *Id.* These allegations are indeed significant.

Having reviewed Plaintiff's first Opposition filed on May 21, 2021, this Court concludes that the brief is, in fact, largely a verbatim reproduction of the opposition brief filed in *Antekeier*. *Compare* Dkt. 43 *with* Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (Dkt. 26), *Antekeier*, 2017 WL 9673480. Although the two briefs recite similar points

and authorities, the resemblances do not end there. For example, Plaintiff's brief attempts to distinguish *Gomez v. Haystax Tech., Inc.*, No. 16-cv-1433, 2017 WL 5478179, at *5 (E.D. Va. Nov. 14, 2017), arguing that "Lowe's cites this Court's recent opinion" in that case. But *Gomez* is never cited in Defendant Lowe's's brief. This is no misplaced citation, as the brief bears other hallmarks of having been directly copied from the opposition brief in *Antekeier*. For example, Plaintiff's Opposition repeatedly references "Dkt. 24"—purportedly Defendant's Motion for Summary Judgment—even though Defendant's Motion for Summary Judgment in this case was filed as Dkt. 44. The docket number Plaintiff cites does, however, correspond to the summary judgment motion docketed in *Antekeier*. And the brief discusses individuals known as "Ramsey" and "Maruca," even though those name appears nowhere in Defendant's summary judgment papers or elsewhere in the record in this case. Instead, Dennis Ramsey and Jim Maruca appear to be the names of the employee's supervisors in *Antekeier*. *See* Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, *Antekeier*, 2017 WL 9673480.

This might all be interpreted as a simple filing mistake if Plaintiff's counsel had represented that she accidentally filed a brief from another one of her cases. But, as Defendant notes, Plaintiff's counsel was not counsel of record in the *Antekeier* case. Similarly, Plaintiff does not claim she had any involvement in that matter. The implication Defendant draws from these facts is that Plaintiff's first brief was "merely a placeholder" filing—which Plaintiff's counsel apparently lifted wholesale from an entirely different case in which she had no role—designed to meet the filing deadline. Dkt. 49, 7. These actions by Plaintiff's counsel are very unfortunate.

But the significance of counsel's conduct does not end there. These circumstances become even more troublesome in that Plaintiff's counsel had already *sought* and received, over Defendant's objection, a three-day extension to file an Opposition to Defendant's Motion for

Summary Judgment. Dkt. 42. In response, Plaintiff's counsel maintains that her request was "very conservative" in light of her other work-related responsibilities and deadlines, and she emphasizes that she should have instead requested a four-day extension. Dkt. Nos. 52; 53. Furthermore, Plaintiff's counsel cites a stress-related medical issue she experienced "related to [the] culmination of all her case filings," which she states "delayed her ability to work on her brief" and meet the already-extended filing deadline. *See id.* Moreover, Plaintiff's counsel represents that "she did her best to file what she could as a response," "know[ing] that she would need to correct her filing." *Id.* When counsel belatedly filed this "corrected" brief, she did so without seeking or obtaining leave to do so, another factor this Court weighs. *See Look Cycle*, 933 F. Supp. 2d 787, 792 (E.D. Va. 2013) ("Plaintiff's counsel here could have provided notice to the Court prior to the filing deadline yet failed to do so.").

Simply put, the explanations offered by Plaintiff's counsel do not stand muster under the Federal Rules of Civil Procedure. Under the Rules, only "excusable neglect" can justify post-hoc extensions of time like the one counsel now requests." Fed. R. Civ. P. 6(b)(1)(B). As the Court has observed, "a busy schedule, lack of diligence, inadvertence, or other manifestations of carelessness and laxity" "do[] not qualify as excusable neglect[.]'" *Key v. Robertson*, 626 F. Supp. 2d 566, 577 (E.D. Va. 2009) (quoting *Eagle Fire, Inc. v. Eagle Integrated Controls, Inc.*, Civ. Action No. 3:06-cv-264, 2006 WL 1720681, at *4 (E.D. Va. June 20, 2006)). Counsel's account for her conduct amounts to "a mere concession of palpable oversight or administrative failure generally," *Thompson*, 76 F.3d at 534 (citation omitted), and this rationale is insufficient to carry her burden of demonstrating excusable neglect under governing case law. When it became apparent that counsel could not meet the new filing deadline of Friday, May 21, 2021, she might have filed a second motion for extension that day. Instead, Plaintiff's counsel made either the

conscious or inattentive decision to file a brief with argument from an unrelated case, representing the brief as Plaintiff's Opposition to Defendant's Motion for Summary Judgment, with no mention of her intent to file a second Opposition brief the following Monday.  *See* Dkt. 43.

The Court will grant Defendant's Motion to Strike Plaintiff's Second Opposition to Motion for Summary Judgment and accompanying exhibits and instead will consider Plaintiff's first Opposition to Defendant's Motion for Summary, which was filed on May 21, 2021, as the sole opposition brief on summary judgment.  Consistent with this ruling, the Court will also deny Plaintiff's belated Motion to File Out of Time.  Plaintiff's counsel's actions dictate this outcome.[2]

## B.  Motion for Summary Judgment

After reviewing the factual record on a Rule 56 motion, this Court must determine whether summary judgment is appropriate as to either of Plaintiff's claims or whether genuine issues of material fact exist as to one or both of Plaintiff's FMLA claims.  As the Court must strike Plaintiff's untimely second Opposition and her first Opposition relies on argument from a different case, without any record support, Plaintiff cannot demonstrate a genuine issue of material fact as to any claim she asserts.  Defendant is entitled to summary judgment on this independent basis.

Even so, the Court assesses the merits of Defendant's Motion for Summary Judgment.  In considering this Motion, the Court affords full consideration to Plaintiff's introduction, summary of the argument, Response to Defendant's Statement of Material Facts, Statement of Undisputed Facts, and articulation of the summary judgment standard as set forth in her Opposition filed on

---

[2] This type of situation is unfortunately not unprecedented.  *See, e.g.*, *Li Fang Liu v. Mukasey*, 296 F. App'x 162, 164 (2d Cir. 2008).  In *Mukasey*, where counsel submitted a brief with an argument section copied wholesale from an unrelated case, the court noted that although "[t]he use of boilerplate language is an acceptable, and even desirable component of legal writing," the attorney inappropriately filed a brief "contain[ing] boilerplate that ha[d] nothing to do with the petitioner's case."

May 21, 2021.  *See* Dkt. 43, 3-14.  The Court first examines the merits of Plaintiff's retaliation claim before resolving her interference claim.

## 1.  FMLA Retaliation Claim

Because Plaintiff seeks to establish proof through pretext rather than bringing direct or circumstantial evidence in support of her FMLA retaliation claim, the Court analyzes Plaintiff's claim under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Hannah P. v. Coats*, 916 F.3d 327, 347 (4th Cir. 2019) (citing *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013)) ("Courts analyze FMLA retaliation claims, like discrimination claims brought pursuant to the Rehabilitation Act, under the *McDonnell Douglas* burden-shifting framework."); *see also Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 550-51 (4th Cir. 2006) ("FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas*[.]").

To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must prove three elements: that (1) she engaged in protected activity; (2) her employer took adverse action against her; and (3) the adverse action was causally connected to her protected activity.  *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (internal quotation marks omitted).  Under this burden-shifting framework, if an FMLA plaintiff establishes a *prima facie* case of retaliation, the burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory justification for taking the employment action at issue.  *Hannah P.*, 916 F.3d at 347.  If the defendant meets this burden, the burden then shifts back to the plaintiff, who must demonstrate that the defendant's stated reason is pretextual.  *Id.*

### a.  Plaintiff's Prima Facie *Showing of Retaliation*

Plaintiff's employment with Lowe's ended when she was terminated on October 19, 2018. There is no question that termination generally qualifies as an adverse employment action. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A materially adverse change might be indicated by a termination of employment.") (citation omitted); *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018) ("[I]t is patently obvious and undisputed that termination is a materially adverse action."). Defendant does not contest this fact. Only the first and third elements of Plaintiff's *prima facie* case are at issue on summary judgment. Therefore, the Court must determine whether Plaintiff engaged in a protected activity and whether that activity and her termination are causally connected.

### i. Protected Activity

To prevail on an FMLA retaliation claim, "an employee must prove, as a threshold matter, that the employer violated" the law "by engaging in discrimination because of" her FMLA-protected activity. *King v. Inova Health Care Servs.*, No. 1:19-cv-31, 2020 WL 2108728, at *11 (E.D. Va. May 1, 2020) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). Although the record contains multiple instances of Plaintiff purportedly engaging in protected activity, they may be divided into three tranches. The first is Plaintiff's June 2018 leave request. The second encompasses the more than 30 times Plaintiff's start time was changed between July and October of 2018. Third is Plaintiff's request for FMLA leave that she made after the timecard issue had been brought to light and she had been recommended for termination. For the following reasons, only the first and final requests meet the definition of protected activity.

Indeed, Plaintiff's June 2018 request constituted protected activity under the FMLA. She requested leave under the statute, and, notwithstanding the defects in her request and the accompanying certification, Plaintiff requested leave to care for her mother at that time. Similarly,

Plaintiff requested FMLA leave on October 15, 2018.  Defendant does not appear to contest that this request, too, constitutes protected activity under the FMLA.  *See generally* Dkt. Nos. 38-1; 51. By contrast, the Court concludes that of the 33 instances in which Plaintiff's timecard was altered in response to her reporting late to work, none qualify as protected activity under the FMLA.  These illegitimate circumstances cannot form the basis of protected activity under the FMLA, even if Plaintiff secured her supervisors' explicit or tacit approval to arrive to work late and conceal that fact through the company's timekeeping system.  *See Sharif v. United Airlines, Inc.,* 841 F.3d 199, 206 (4th Cir. 2016) ("The FMLA serves the important purpose of allowing employees to take leave for legitimate family needs and medical reasons, but it is not a right that can be fraudulently invoked.").

### ii.  Causation

In addition to proving she engaged in protected activity and suffered an adverse employment action, Plaintiff must also establish causation to make out her *prima facie* retaliation claim under the FMLA.  For this third element, the Court must determine whether Plaintiff has adequately demonstrated that her engagement in activity the FMLA protects caused her termination.

At the *prima facie* stage, a plaintiff's task of establishing causation "is not an onerous burden[.]"  *See Strothers*, 895 F.3d 317, 335 (4th Cir. 2018) (citing *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015)).  In the analogous context of Title VII retaliation, the Fourth Circuit has not read Supreme Court precedent to require evidence of but-for causation at the *prima facie* stage.  *See Foster*, 787 F.3d at 251 (holding that *Univ. of Texas Southwestern Med. Center v. Nassar*, 570 U.S. 338 (2013), does not have "any bearing on the causation prong of the prima facie case").  This means that "[p]urported victims of retaliation do not have to show at the

prima facie stage that their protected activities were but-for causes of the adverse action." *Strothers*, 895 F.3d at 335 (4th Cir. 2018).

There is no basis in the record for concluding that Plaintiff's June 2018 leave request was causally connected to her October 19, 2018 termination. A key factor in determining causation is temporal proximity. In FMLA retaliation cases, "for purposes of establishing a *prima facie* case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) (citations omitted). Approximately four months passed between the protected activity and an adverse employment action. *See* Dkt. 43, 2-3. Without more, the Court can draw no inference that the two events are causally linked. Having reviewed the record and her Opposition to Defendant's Motion, this Court is unpersuaded that Plaintiff could marshal any other admissible evidence at trial that might convince a reasonable jury her June 2018 FMLA request was causally connected to her termination in October of 2018.

Plaintiff's October 15, 2018 FMLA leave request presents a different question. In the case of that request, Plaintiff asked for FMLA leave just four days before she was terminated. At least at the *prima facie* stage, where an employee's burden of demonstrating causation is far less onerous than what is ultimately required at the plaintiff's burden-of-persuasion phase, such close temporal proximity may sufficiently support the causation element. In a recent FMLA case, this Court found "the temporal proximity of just three days passing between [a plaintiff's] accommodation request and her adverse action indicate[d] a causal connection." *Williams v. Va. Polytechnic Inst. & State Univ.*, 451 F. Supp. 3d 467, 479 (E.D. Va. 2020). This Court follows that approach again here, finding the four-day interval between Plaintiff's engagement in protected activity and her termination sufficient to support causation at the *prima facie* stage on summary judgment. *See*

*Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) ("While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a *prima facie* case of causality.'") (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

In sum, Plaintiff fails to make a *prima facie* case as to any FMLA retaliation theory preceding her October 15, 2018 leave request. Because Plaintiff has established that she participated in a protected activity on October 15, 2018 and that there could arguably be some causal link between that activity and her termination, however, Plaintiff succeeds in making a *prima facie* showing of FMLA retaliation with respect to her leave request.

### b. *Defendant's Burden of Production*

The Court next turns to whether Defendant has met its burden of production under the *McDonnell Douglas* framework for retaliation claims. After an FMLA plaintiff makes out a *prima facie* case of retaliation, the burden then shifts to the defendant to provide a legitimate, non-retaliatory justification for the adverse employment action. *Hannah P.*, 916 F.3d at 347. For the following reasons, Defendant has satisfied its burden.

Defendant points to Plaintiff's manipulation of the company's time and attendance system to avoid being marked late as the reason for her termination. *See* Dkt Nos. 38-1; 59. According to Defendant, Plaintiff requested that her managers alter her start time in the company's timekeeping system so she would not be marked late 33 times between July 20, 2018, and October 10, 2018—or, at the very least, acquiesced in that conduct. *See id.* Plaintiff's termination was no isolated instance; she was not fired on feckless charges of clerical negligence. Instead, her employer conducted an expansive audit after Plaintiff admitted to wrongdoing in a written statement. After the results of the audit, Lowe's investigated. The company uncovered what

increasingly appeared to be a widespread issue with timecard falsification at its Alexandria store. And when Lowe's discovered nine others had also participated in the falsification scheme, the company took immediate action, firing each of those involved—including the four managers who had aided Plaintiff in altering her timecards. The Court finds Defendant's explanation sufficient to rebut the presumption created by Plaintiff's *prima facie* showing of retaliation under the FMLA, and Defendant therefore carries its burden at this stage under *McDonnell Douglas*. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003).

Because Defendant has carried its burden of production, the presumption created by Plaintiff's *prima facie* case "'drops out of the picture,' and the burden shifts back to the employee to present evidence from which a reasonable juror could find that the proffered reason was a pretext for discrimination or retaliation." *Burgess v. Bowen*, 466 F. App'x 272, 277 (4th Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

### c. Plaintiff's Burden of Persuasion

With Defendant having carried its burden of articulating a non-retaliatory reason for terminating Plaintiff, the burden of persuasion next shifts back to Plaintiff to show that her employer's reason was pretextual to disguise the true retaliatory reason for her termination. In retaliation cases generally, a plaintiff can rebut a defendant's non-retaliatory reason and demonstrate pretext by showing "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). A similar standard governs FMLA cases. *See Boone v. Bd. of Governors of Univ. of N. Carolina*, No. 19-1758, 2021 WL 2396228, at *3 (4th Cir. June 11, 2021) (applying burden-shifting framework in concluding that plaintiff had failed to

rebut defendant university's proffered reason for terminating the employee).  An employee must establish "*both* that the reason was false, *and* that discrimination was the real reason" for the adverse employment action.  *Hicks*, 509 U.S. at 515.  And a plaintiff who demonstrates "retaliation was the real reason for the [adverse employment action]," *Holland*, 487 F.3d at 218, "will necessarily be able 'to show that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct[.]'"  *Foster*, 787 F.3d at 252 (quoting *Nassar*, 570 U.S. at 346-47).

To be certain, Plaintiff appears to have performed admirably in much of her time at Lowe's, winning multiple awards during her years of employment there.  But when a court evaluates pretext in a retaliation case, the court must only measure the employer's proffered reason for taking adverse employment action against the possible pretextual justifications for its decision to terminate an employee.  *See Fry v. Rand Constr. Corp.*, 964 F.3d 239, 246 (4th Cir. 2020) (quoting *Foster*, 787 F.3d at 252) (holding that an FMLA plaintiff must "establish both that the employer's reason was false and that [retaliation] was the real reason for the challenged conduct").  To push the judicial inquiry beyond this modest task would risk transforming federal courts into "super-personnel department[s] weighing the prudence of employment decisions." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).  That is why "when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the courts'] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."  *Id.* (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)).

Here, Defendant's stated reason for terminating Plaintiff—her repeated, concerted efforts to falsify her time records in violation of company policy—appears to be Defendant's core reason for firing her.  On at least 33 occasions, Plaintiff failed to report to work at the required time and

misled her employer by having her timecard altered. Plaintiff acknowledges that the Lowe's Employee Standards of Conduct Policy stated that, "[e]mployees are expected to ensure that all company records are complete, accurate, timely, and understandable" and cautioned that employees should "[n]ever hide, alter, falsify, or disguise the true nature of any transaction or accounting activity, nor forge endorsements, approvals, or authorizing signatures for any payment[.]" Dkt. 43, 7.[3] Flouting this policy was a "Class A violation" at Lowe's; violators could be terminated. And the decision to terminate Plaintiff had already been made by the time Plaintiff made her FMLA leave request on October 15, 2018, by decisionmakers the record suggests knew nothing of her new FMLA request. Presented with these facts, no reasonable jury could conclude that "but for" Plaintiff's October 15, 2018 FMLA leave request, she would not have been terminated. Therefore, summary judgment on Plaintiff's FMLA retaliation claim is appropriate.

### 2. FMLA Interference Claim

To enforce the FMLA's substantive provisions, Congress also made it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" to which an employee may be entitled under the statute. 29 U.S.C. § 2615(a)(1). This provision proscribes employers from interfering with the rights FMLA confers on employees who avail themselves of the law's protections. "To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) [s]he is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v.*

---

[3] Plaintiff asserts that the policy "does not apply to the facts in Ms. Zhou's case given that she did not falsify anything she clocked in when she arrived[.]" Dkt. 43, 7. The Court declines to prohibit Defendant from interpreting and enforcing its own company policy, however. Plaintiff also argues that "[h]er managers adjusted her start time pursuant to Lowe's policy[,]" but the suggestion that this conduct complied with company policy cannot be accepted in light of the fact that Defendant also terminated each of the four managers involved in altering Plaintiff's timecards.

*Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).

The FMLA allows an eligible employee to take 12 weeks of leave during any 12-month period due to "a serious health condition that makes the employee unable to perform the functions of such employee." 29 U.S.C. § 2612(a)(1)(D). When an employee's leave period ends, the employee is entitled to "be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1)(A). This requirement has limits. If, for example, "the employee is unable to perform an essential function of the position because of a physical or mental condition," then "the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(c).

Because Plaintiff's FMLA interference claim contains multiple components, the Court first examines her claim as it relates to her request for FMLA leave in June of 2018. Then, the Court addresses any liability Defendant may face for interfering with Plaintiff's FMLA rights between July and October of that year. Lastly, the Court considers whether Defendant interfered with Plaintiff's FMLA rights by failing to provide timely notice of those rights.

### a. June 2018 Request

### i. FMLA Interference

To succeed on her FMLA interference claim, Plaintiff first must establish that she was entitled to receive an FMLA benefit when she requested leave in June of 2018. For two reasons, she cannot make this showing.

First, Plaintiff did not comply with her employer's requirements for requesting FMLA leave as she failed to provide sufficient certification in support of her leave request in June of 2018. "The core requirements for triggering an employer's obligations" under the FMLA "are a serious health condition and adequate communication, meaning a timely communication sufficient to put

an employer on notice that the protections." *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 515-16 (D. Md. 2008). To determine whether its FMLA obligations are triggered, "[a]n employer has discretion to require that an employee's leave request 'be supported by a certification issued by the health care provider of the . . . employee[.]'" *Rhoads v. F.D.I.C.*, 257 F.3d 373, 383 (4th Cir. 2001) (quoting 29 U.S.C. § 2613(a)). After an employer gives written notice that the company requires medical certification in support of an FMLA leave request, the employee must provide a "sufficient" certification to her employer. *Rhoads*, 257 F.3d at 383.

Among other requirements, the certification must contain the probable duration of the leave. *See* 29 U.S.C. § 2613(b)(6)-(7); *see also Brushwood v. Wachovia Bank, N.A.*, 520 F. App'x 154, 157 (4th Cir. 2013) ("Proper notice make[s] the employer aware that the employee needs FMLA-qualifying leave and includes the anticipated timing and duration of the leave.") (*quoting Rhoads*, 257 F.3d at 382-83 and 29 C.F.R. § 825.302(c)). Although she checked a box in her FMLA leave form requesting intermittent leave, Plaintiff alleges in the Complaint that she "inquire[d] about taking leave from June 28, 2018 to July 11, 2018, only 10 days of the 12 weeks of leave she was eligible for"—a request Defendant's third-party administrator reasonably interpreted as a request for continuous leave. *See* Dkt. 1, ¶ 32. Plaintiff later sought to adjust her period of requested continuous leave when she "contacted the Reed Group and told them that she needed to change her FMLA dates to take leave for two weeks starting on July 5, 2018." *See id.* ¶ 33. Nevertheless, the certification form that Dr. Duska signed indicated that Plaintiff required only intermittent leave of two to three days to care for her mother. An employer is not required to grant FMLA leave when faced with this sort of incongruence; courts in this circuit have granted summary judgment on FMLA interference claims when plaintiffs fail to comply with an employer's certification requirements. *See Ahmed v. Salvation Army*, No. CIV. CCB 12-707, 2012

WL 6761596, at *8 (D. Md. Dec. 28, 2012), *aff'd*, 549 F. App'x 196 (4th Cir. 2013).

Generally, Plaintiff proffers a definitional attack on the concept of intermittent leave under the FMLA, insisting that the unbroken, approximately two-week period of absence she requested constituted a request for intermittent leave under the statute. This suggestion cannot create a genuine issue of material fact to preclude summary judgment. Under the FMLA, "[a] period of intermittent leave . . . is not made up of a single continuous absence." *Davis v. Michigan Bell Tel. Co.*, 543 F.3d 345, 351 (6th Cir. 2008) (observing that an argument suggesting a multi-week period of leave qualifies as intermittent leave "is based on a misunderstanding of the concept of intermittent leave"). And as this Court has noted, FMLA "[l]eave that is taken intermittently must, by definition, comprise periods in which the employee is absent from work and periods in which the employee is present at work." *Barron v. Runyon*, 11 F. Supp. 2d 676, 681 (E.D. Va. 1998). Plaintiff requested an approximately ten-day continuous absence from work, which she later amended to a fourteen-day continuous period, notwithstanding the fact that she checked a box indicating she sought "intermittent leave" on her FMLA request form. The Court declines to adopt a contrary "position [that] would render the term *intermittent leave* meaningless, essentially reading it completely out of the statute." *Id.*

Second, when asked to provide clarifying information regarding the nature of her requested leave, Plaintiff did not submit additional details about the type of leave she sought when Reed Group sought clarification. *See* Dkt. 38-14, ¶ 8. She also did not elect to provide additional information after her request was denied. An "employer must inform the employee of the consequences of failure to provide [FMLA leave] certification, *see* 29 C.F.R. § 825.305(c) (1993), and the employer must allow the employee at least fifteen calendar days to submit it, see id. § 825.305(a)." *Rhoads*, 257 F.3d at 383. If the employer determines a certification form is

incomplete, the employer "shall advise" the employee of this conclusion and also give "the employee a reasonable opportunity to cure any . . . deficiency." 29 C.F.R. § 825.305(c); *see also Rhoads*, 257 F.3d at 383 ("The employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave.").

Lowe's adhered to these requirements. Because the FMLA permits both continuous and intermittent leave, Lowe's—through its third-party administrator—requires its employees to specify which type of FMLA leave they are requesting. Dkt. 38-1, 27 (citing Dkt. 38-14, ¶ 6). This is a fact with which Plaintiff might have been well-acquainted considering that she had obtained FMLA leave from Lowe's after supplying additional documentation to support a 2011 request. *See* Dkt. 38-1, 28 n.4. This information was also included on the Reed Group forms that Plaintiff completed and returned. *Id.* at 28. But when Plaintiff requested continuous leave starting on July 5, 2018, she submitted information from Dr. Duska indicating that she would only need two to three days of *intermittent* leave in late June to early July of 2018. *Id.* ¶ 12. And when the company's third-party FMLA leave administrator tried to clarify the discrepancy with Plaintiff, she failed to respond to the inquiry for several weeks. Dkt. 38-14 ¶ 8. Only after this lack of clarification was Plaintiff's FMLA request denied on July 30, 2018; what is more, she did not provide any additional information in response to this denial. *See id.*; *see also* Dkt. 59-1. An employee requesting FMLA leave must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Shoemaker v. Alcon Lab'ys, Inc.*, 741 F. App'x 929, 932 (4th Cir. 2018) (quoting 29 C.F.R. § 825.303(b)). Because Plaintiff cannot establish that she was entitled to an FMLA benefit on these facts, her FMLA interference claim cannot proceed.

ii. Prejudice to Employee from Interference

Aside from the absence of any FMLA entitlement, Plaintiff cannot obtain relief on her FMLA interference claim for a separate reason. Even if Plaintiff could show that she was entitled to an FMLA benefit, the undisputed facts establish that she did not suffer any prejudice resulting from her employer's denial of her FMLA leave request. In fact, Plaintiff ultimately took leave for a continuous, two-week period. This was unpaid personal leave and not FMLA leave, but Plaintiff's deposition testimony reveals that Defendant did indeed grant her the leave she sought. *See* Dkt. 38-3, 48 ("I was able to have those two weeks off, but I think they used a vacation to pay me."). During this period, she did not lose any accrued time off or other benefits. Summary judgment is appropriate on an FMLA interference claim where, as here, an employee cannot point to any prejudice flowing from actual loss. *See, e.g.*, *Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 198 (4th Cir. 2013) (affirming summary judgment on FMLA interference claim where a plaintiff did "not claim that she lost any compensation or benefits, sustained other monetary loss, or suffered loss in employment status as a result of the purported interference"). In sum, Defendant allowed Plaintiff to take more time off work than the two to three days Dr. Duska recommended, and the record is devoid of facts sufficient to conclude she suffered prejudice resulting from her requested leave in June and July of 2018.

b. *Post-June 2018 Requests*

Plaintiff also appears to contend that she should have been granted FMLA leave on various dates between July 20, 2018 through October 10, 2018. No reasonable jury could find that Defendant interfered with Plaintiff's FMLA leave during this period, though, because Plaintiff was not qualified or eligible to take FMLA leave during this period of time. The record lacks any evidence to support Plaintiff's claim that her tardies were attributable to her taking her mother to

a medical appointment or administering her care. As a result, Plaintiff cannot succeed on any FMLA claim arising from a purported interference by Defendant during this time period. *See Adams*, 789 F.3d at 427 (observing that an employee suing for FMLA interference must first demonstrate that she "is entitled to an FMLA benefit").

Neither does Plaintiff demonstrate any prejudice she suffered during this time period. To the extent Plaintiff supports her FMLA interference claim by pointing to her termination as proof of prejudice, that sort of claim is properly brought as an FMLA retaliation claim. *See, e.g.*, *Natal v. Arlington Cty. Pub. Sch.*, No. 118-cv-1178, 2019 WL 2453659, at \*8 n.6 (E.D. Va. June 12, 2019) (citing *Yashenko*, 446 F.3d at 550-51 (4th Cir. 2006)).

*c. Timely Notice*

Plaintiff appears to have abandoned her argument that Defendant interfered with her FMLA rights by failing to provide adequate notice of those rights. *See* Dkt. 59, 12 n.12 (noting that Plaintiff did not respond to Defendant's argument in support of summary judgment, which constitutes a concession by Plaintiff, and citing *Irani v. Palmetto Health*, 767 F. App'x 399, 423 (4th Cir. 2019)).

Defendant is also entitled to summary judgment on the merits of this theory of FMLA interference, however. First, the undisputed facts show that Plaintiff was not entitled to receive an FMLA notice because she did not follow the company's procedure for making an FMLA request. Dkt. 38-14, ¶ 5. Second, to the extent Plaintiff's unsubstantiated conversations with Hubbard and Cobbinah constituted an informal FMLA request, there is no record evidence showing that Plaintiff provided any information about potential treatments or her mother's medical appointments, the need for Plaintiff to care for her mother, or any other documentation that might have supported Plaintiff's argument that she needed time off to care for her mother. Dkt. 38-1, 31. Third, Plaintiff

received a complete notice from Reed Group after she made her FMLA request in June of 2018. *Id.* This notice preceded any of the dates on which Plaintiff's start time was changed; had Plaintiff required FMLA leave for those dates, she was given adequate notice through the Rights and Responsibilities document she received.[4] *See id.* Fourth and finally, Plaintiff cannot establish that she would have structured her leave differently had she received this document a month earlier. *See, e.g.*, *Dorsey v. Jacobson Holman, PLLC*, 476 F. App'x 861, 862 (D.C. Cir. 2012); *Wintz v. Cabell Cty. Comm'n*, No. 3:15-11696, 2016 WL 7320887, at *4 (S.D. W. Va. Dec. 15, 2016). Therefore, any argument that Plaintiff received inadequate notice cannot form the basis of an FMLA interference claim.

## IV. CONCLUSION

For these reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Dkt. 38) is GRANTED; and

IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's Second Opposition to Motion for Summary Judgment (Dkt. 48) is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Motion to File Out of Time (Dkt. 51) is DENIED; and

IT IS FURTHER ORDERED that the final pretrial conference and jury trial set in this action are VACATED.

The Clerk is directed to enter judgment for Defendant and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
June 29, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[4] Plaintiff also received FMLA notices from Defendant's third-party leave administrator on October 16, 2018, the day after she made another FMLA request. *See* Dkt. 38-14, ¶¶ 3, 10. Therefore, she also received adequate notice for this separate FMLA request.